1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JAMES FRAZIER,

11             Plaintiff,                    No. CIV S-06-0859 LKK DAD P

12        vs.

13   A. KONRAD,                              FINDINGS AND RECOMMENDATIONS

14             Defendant.

15   _____/

16        Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking

17   relief under 42 U.S.C. § 1983.  The matter is before the court on defendant's August 27, 2007

18   motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil

19   Procedure.  Plaintiff has not filed any opposition to the motion.[1]

20                              **BACKGROUND**

21        In his complaint, plaintiff alleges that, on May 5, 2005, he was instructed by

22   defendant Konrad to lay down on the floor for no reason.  Plaintiff claims that he told defendant

23

24        [1]  On October 11, 2007, the court ordered plaintiff to file his opposition to defendant's
     motion within thirty days.  The court warned plaintiff that failure to do so would be deemed as a
25   statement of non-opposition and result in a recommendation that this action be dismissed.
     Plaintiff has not complied with the court's October 11, 2007 order.  Accordingly, dismissal
26   pursuant to Federal Rule of Civil Procedure 41(b) would be justified.

1  Konrad that he would not put his face down on a dirty blanket.  Plaintiff alleges that defendant

2  Konrad then slammed him onto the floor, causing him to bite and injure his tongue.  Plaintiff also

3  alleges that defendant Konrad then cut his clothes off of his body, made sexual remarks about his

4  buttocks and put his knee in his back.  Plaintiff claims that as a result he experienced injuries to

5  his tongue, back and neck.  Plaintiff concludes that defendant Konrad violated his Eighth

6  Amendment right to be free from cruel and unusual punishment.  (Compl. at 3.)

7  **PROCEDURAL HISTORY**

8  Plaintiff commenced this action by filing a civil rights complaint on April 21,

9  2006.  At screening, the court determined that the complaint stated cognizable claims against

10  defendant Konrad and, in due course, the United States Marshal served plaintiff's complaint.  On

11  August 4, 2006, defendant Konrad filed an answer.  On August 10, 2006, this court issued a

12  discovery order.

13  On August 27, 2007, defendant Konrad filed the instant motion for summary

14  judgment.  As noted above, plaintiff failed to file a timely opposition or statement of non-

15  opposition causing the undersigned to issue an order to show cause on October 11, 2007.

16  Therein, the court ordered plaintiff to file his opposition, if any, to defendant's motion for

17  summary judgment within thirty days.  Plaintiff has not filed an opposition or otherwise

18  complied with this court's order.

19  **SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

20  Summary judgment is appropriate when it is demonstrated that there exists "no

21  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

22  matter of law."  Fed. R. Civ. P. 56(c).

23  Under summary judgment practice, the moving party
   always bears the initial responsibility of informing the district court

24  of the basis for its motion, and identifying those portions of "the
   pleadings, depositions, answers to interrogatories, and admissions

25  on file, together with the affidavits, if any," which it believes
   demonstrate the absence of a genuine issue of material fact.

26

1   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

2   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

3   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

4   to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

5   after adequate time for discovery and upon motion, against a party who fails to make a showing

6   sufficient to establish the existence of an element essential to that party's case, and on which that

7   party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

8   concerning an essential element of the nonmoving party's case necessarily renders all other facts

9   immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

10  whatever is before the district court demonstrates that the standard for entry of summary

11  judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

12          If the moving party meets its initial responsibility, the burden then shifts to the

13  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

14  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

15  establish the existence of this factual dispute, the opposing party may not rely upon the

16  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

17  form of affidavits, and/or admissible discovery material, in support of its contention that the

18  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

19  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

20  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

21  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

22  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

23  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

24  1436 (9th Cir. 1987).

25          In the endeavor to establish the existence of a factual dispute, the opposing party

26  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

3

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

        In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

        On May 31, 2006, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

## OTHER APPLICABLE LEGAL STANDARDS

I. Civil Rights Act Pursuant to 28 U.S.C. § 1983

        The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

4

1    42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the

2    actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See

3    Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

4    (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the

5    meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

6    omits to perform an act which he is legally required to do that causes the deprivation of which

7    complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

8    II. Eighth Amendment Cruel and Unusual Punishment Clause

9         The Eighth Amendment prohibits the infliction of "cruel and unusual

10   punishments." U.S. Const. amend. VIII. It is well established that the "unnecessary and wanton

11   infliction of pain" constitutes cruel and unusual punishment prohibited by the United States

12   Constitution. Whitley v. Albers, 475 U.S. 312, 319 (1986). See also Ingraham v. Wright, 430

13   U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor

14   negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not

15   inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and

16   Unusual Punishments Clause." Whitley, 475 U.S. at 319.

17        What is needed to show unnecessary and wanton infliction of pain "varies

18   according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S.

19   1, 5 (1992) (citing Whitley, 475 U.S. at 320). The plaintiff must show that objectively he

20   suffered a sufficiently serious deprivation and that subjectively each defendant had a culpable

21   state of mind in allowing or causing the plaintiff's deprivation to occur. Wilson v. Seiter, 501

22   U.S. 294, 298-99 (1991).

23        "The objective component of an Eighth Amendment claim is . . . contextual and

24   responsive to 'contemporary standards of decency.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992)

25   (quoting Estelle, 429 U.S. at 103). The objective prong of the test requires the court to consider

26   whether the alleged wrongdoing was harmful enough to establish a constitutional violation.

5

Hudson, 503 U.S. at 8; Wilson, 501 U.S. at 298.  In the context of an excessive use of force claim, however, the objective prong does not require a prisoner to show a "significant injury" in order to establish that he suffered a sufficiently serious constitutional deprivation.  503 U.S. at 9-10.

The subjective prong of the two-part test is also contextual.  Wilson, 501 U.S. at 299.  A prison official acts with the requisite "culpable mind" with respect to an excessive use of force claim if he acts maliciously and sadistically for the purpose of causing harm.  Whitley, 475 U.S. at 320-21.  "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley, i.e.,  whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson, 503 U.S. at 6-7.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I. Defendant's Statement of Undisputed Facts and Evidence

Defendant's statement of undisputed facts is supported by the declarations of defendant Konrad and Dr. G. Borges as well as copies of plaintiff's medical records.

The undersigned finds that defendant's evidence establishes the following facts: plaintiff was incarcerated at CSP-Sacramento at all material times mentioned in his complaint. Defendant Konrad has been a correctional officer employed at CSP-Sacramento since 1998.  He has more than five years of experience as a mental health escort officer.  He held that position in May 2005 when the alleged events took place.

Based on his years of experience with mental health inmates, defendant Konrad's practice was to remove a suicidal inmate's clothing when the inmate arrived at his cell in the higher care mental health unit.  Removing clothes from a suicidal inmate prevented the inmate from using his clothes to harm himself.  If an inmate refused to voluntarily strip out, did not respond to the request, or displayed possible hostility, defendant Konrad cut off the inmate's clothing using safety scissors while the inmate was fully restrained.  Cutting off the inmate's

clothing with safety scissors while the inmate was fully restrained allowed defendant Konrad to avoid or minimize the use of force.  To cut off an inmate's clothing, defendant Konrad had the inmate kneel on a clean blanket or blankets that had been laid on the ground.  Defendant Konrad then instructed the inmate to lean forward and assisted the inmate to lay on his stomach. Defendant Konrad then cut off the inmate's clothes using the safety scissors, provided the inmate with a smock to wear, and then removed the inmate's handcuffs before leaving the cell. Defendant Konrad's practice in this regard was similar to that employed at CSP-Sacramento by other correctional officers .

On the night of May 5, 2005, defendant Konrad and two other correctional officers escorted plaintiff to a B-Facility ZZ holding cell to be seen by mental health staff because he was suspected of being suicidal.  Because of plaintiff's belligerent, uncooperative, and hostile behavior during the escort, defendant Konrad cut off plaintiff's clothing in the manner described above.  Defendant Konrad did not make any inappropriate remarks or use any force against plaintiff during the escort or his placement in the ZZ cell.

On May 6, 2005, Dr. N. Coss, Clinical Psychologist, examined plaintiff for being possibly suicidal.  After that examination, plaintiff was examined by his psychiatrist, Dr. R. Frishman.  The chart notes of both doctors make no mention of any complaint of injury or use of force by plaintiff.

On May 7, 2005, plaintiff submitted a health care services request form for a bump on his right flank caused by an imbedded piece of metal.  On May 11, 2005, plaintiff was treated for this bump on his buttock.  On May 18, 2005, plaintiff was examined for ulcers.  On May 31, 2005, plaintiff submitted a health care services request form for his heart condition.  On June 2, 2005, he was seen by medical staff for his heart condition.  On June 13, 2005, plaintiff submitted health care services request forms for lotion and sinus medication.  On June 14, 2005, he was treated for itchy skin and congestion.  On July 13, 2005, Dr. Gabriel Borges, D.O., a Staff Physician, examined plaintiff for his diabetes and hypertension.  On August 3, 2005, Dr. Borges

examined plaintiff for toenail fungus.  On August 8, 2005, plaintiff submitted a health care services request form to address his vomiting.  On August 24, 2005, Dr. Borges examined plaintiff for stomach complaints and allergies.  On September 20, 2005, plaintiff submitted a health care services request form to have wax removed from his ears.  On September 22, 2005, plaintiff  was examined due to complaints that he had suffered from nausea and vomiting for three to four weeks.  On September 28, 2005, Dr. Borges examined plaintiff for gastritis.

Plaintiff's medical records spanning the period June 2005 through September 2005, make no mention of any complaints of injuries suffered as a result of any use of force. During Dr. Borges' examinations of plaintiff from July 2005 through September 2005, plaintiff never complained that he had been injured by any use of force in May 2005.  Had plaintiff complained to Dr. Borges of being injured by staff through the use of force, it would have been Dr. Borges' custom and practice to chart and follow-up on such a complaint.

Plaintiff's medical records make no reference to any complaints of injuries suffered from the alleged use of force incident until October 12, 2005, when plaintiff reported to Dr. Borges that he was having tongue spasms.  On October 26, 2005, plaintiff first claimed that he had persistent neck pain caused by a correctional officer.  On December 6, 2005, plaintiff underwent x-rays of his neck and lower back.  The neck x-rays revealed cervical spondylosis, which is arthritis of the neck caused by aging.  The x-rays of the lumbar spine showed no significant findings, aside from a metallic fragment overlying or within the left hip bone.

On January 9, 2006, plaintiff reported to Dr. Borges that his neck pain was caused by an assault on May 6, 2005.  Upon examining plaintiff, Dr. Borges diagnosed him as having a cervical strain and prescribed Tylenol for the pain and range of motion exercises.  On February 16, 2006, Dr. Borges again examined plaintiff for neck spasms and prescribed the continued use of Tylenol and the muscle relaxant Robaxin.  On March 8, 2006, plaintiff complained of suffering from low back pain for which he received Tylenol and Robaxin.

/////

1        Dr. Borges' professional opinion is that plaintiff was not injured by any trauma in

2  May 2005.  The onset of any symptoms from a trauma such as that now described by plaintiff is

3  not unlike that of a whiplash injury from a rear-end car accident.  One would expect the

4  symptoms from the trauma to have manifested themselves no more than several days after the

5  incident, rather than five months later.  Plaintiff's cervical x-rays on December 6, 2005, showed

6  arthritis of the neck, which is caused by the natural aging process.  The findings of the December

7  6, 2005 cervical x-rays are essentially the same as those from plaintiff's cervical x-rays of

8  February 23, 1996, further confirming that plaintiff's cervical spondylosis is a chronic, pre-

9  existing condition.

## II. Defendant's Arguments

11        Based on this evidence, defendant Konrad argues that plaintiff's cruel and unusual

12  punishment claim must fail because there is no evidence that he engaged in the excessive use of

13  force against plaintiff.  (Def.'s Mot. for Summ. J. at 5.)  Defendant Konrad argues that

14  plaintiff's allegations of being slammed to the ground and suffering injury to his tongue, neck

15  and back are belied by all medical evidence of record.  (Id.)

16        Defendant Konrad argues that plaintiff must show that he sustained an objectively

17  serious deprivation or injury to rise to the level of an Eighth Amendment violation.  (Def.'s Mot.

18  for Summ. J. at 5-6.)  He contends that in determining whether a use of force was wanton and

19  unnecessary, it is proper to consider the extent of the prisoner's injury, noting that "[n]ot every

20  push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates

21  a prisoner's constitutional rights."  (Id.)  Defendant Konrad argues that the existence of an injury

22  that a doctor or patient would find worthy of comment or treatment, the presence of a condition

23  significantly affecting an individual's daily activities, and the existence of chronic and substantial

24  pain are all recognized as examples of conditions that rise to the level of an objectively serious

25  deprivation or injury.  (Def.'s Mot. for Summ. J. at 6) (citing McGuckin v. Smith, 974 F.2d 1050,

26  /////

1   1059-60 (9th Cir. 1992)).  He contends, however, that the undisputed evidence here establishes

2   that no such serious deprivation or injury was suffered by plaintiff.

3           Defendant Konrad argues that summary judgment in his favor is proper because

4   plaintiff has failed to show the use of any excessive or brutal force requiring medical treatment

5   and plaintiff did not request medical treatment for the alleged injuries.  (Def.'s Mot. for Summ. J.

6   at 6.)  Defendant Konrad notes that to defeat a summary judgment motion, the plaintiff must

7   provide evidence of sufficient "quantum or quality" to permit a reasonable jury to find liability

8   by a preponderance of the evidence and that the mere existence of a scintilla of evidence in

9   support of plaintiff's position is insufficient.  (Id.)  In this regard, defendant Konrad maintains

10  that plaintiff's claim of a brutal attack resulting in serious injury is not supported by sufficient

11  evidence to permit a reasonable jury to find in his favor.  (Def.'s Mot. for Summ. J. at 6.)  He

12  observes that plaintiff was seen by health care professionals  the morning after the alleged attack,

13  yet made no mention of any injuries from use of force.  (Id.)  For five months plaintiff requested

14  medical treatment for a wide variety of ailments but never complained of any injuries from the

15  alleged use of force.  (Id. at 6-7.)  In particular defendants notes that Dr. Borges testified that

16  plaintiff never complained to him of being physically injured by any use of force until at least

17  five months after the incident, that had plaintiff complained to him of being injured by use of

18  force he would have charted and follow-up on his complaint, and that in his professional opinion

19  plaintiff was not injured by any trauma in May 2005 because any such injuries should have

20  manifested themselves within days, not five months later.  (Def.'s Mot. for Summ. J. at 7.)

21  Finally defendant Konrad notes that since 1996 plaintiff's cervical x-rays demonstrate that he has

22  had arthritis of the neck caused by the natural aging process.  (Id.)  Defendant contends that

23  plaintiff has not and will not be able to overcome Dr. Borges' expert opinion on causation.

24  (Def.'s Mot. for Summ. J. at 7.)

25          Defendant Konrad argues that plaintiff's verbal harassment claim must also fail

26  because verbal harassment, verbal abuse, and even mere threats do not violate any constitutional

1   right.  (Def.'s Mot. for Summ. J. at 7.)  In other words, defendant contends that plaintiff's

2   allegations of verbal harassment are insufficient to state a claim.  (Id.)

3              Accordingly, defendant Konrad contends that he is entitled to summary judgment

4   in his favor.[2]

5                                      **ANALYSIS**

6              The court is aware that on summary judgment it is not to weigh the evidence or

7   determine the truth of the matters asserted but must only determine whether there is a genuine

8   issue appropriately resolved by trial.  Summers v. A. Teichert & Son. Inc., 127 F.3d 1150, 1152

9   (9th Cir. 1997).  Nonetheless, in order for any factual dispute to be genuine, there must be

10  enough doubt for a reasonable trier of fact to find for plaintiff in order to defeat defendants'

11  summary judgment motion.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

12  Here, however, the evidence submitted by defendant Konrad in support of his motion for

13  summary judgment is uncontroverted.  Based upon that evidence, the undersigned finds that there

14  are no material questions of fact in dispute surrounding the confrontation that took place between

15  defendant Konrad and plaintiff on May 5, 2005.  The court further finds that defendant Konrad

16  did not use excessive force when he escorted plaintiff and placed plaintiff in the ZZ cell.  To the

17  extent that defendant Konrad used any force in carrying out his duties, it was neither harmful

18  enough to establish a constitutional violation nor carried out maliciously and sadistically with the

19  intent of causing harm.  Hudson, 503 U.S. at 8; Wilson, 501 U.S. at 298; Whitley, 475 U.S. at

20  320-21.  Accordingly, the court concludes that defendant Konrad's motion for summary

21  judgment in his favor on plaintiff's excessive force claim should be granted.

22             The court also finds that under the undisputed facts defendant Konrad is entitled

23  to summary judgment with respect to plaintiff's claim based upon verbal harassment standing

24  alone.  In this regard, "[a]lthough prisoners have a right to be free from sexual abuse, whether at

25  _____

26        [2]  As noted above, plaintiff has not filed any opposition to defendant Konrad's motion for
    summary judgment.

1   the hands of fellow inmates or prison guards, the Eighth Amendment's protections do not

2   necessarily extend to mere verbal sexual harassment." Austin v. Terhune, 367 F.3d 1167, 1171-

3   72 (9th Cir. 2004).  See also Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (vulgar

4   language and verbal harassment do not state a constitutional deprivation under § 1983).  Plaintiff

5   has failed to present any evidence demonstrating that defendant Konrad's actions involved more

6   than mere verbal harassment or deprived him of any constitutional rights.  Accordingly, the court

7   concludes that defendant Konrad's motion for summary judgment on plaintiff's verbal

8   harassment claim should also be granted.

9                                        **CONCLUSION**

10              Accordingly, IT IS HEREBY RECOMMENDED that defendant Konrad's August

11  27, 2007 motion for summary judgment be granted and that this action be dismissed.

12              These findings and recommendations are submitted to the United States District

13  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

14  days after being served with these findings and recommendations, any party may file written

15  objections with the court and serve a copy on all parties.  Such a document should be captioned

16  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

17  shall be served and filed within ten days after service of the objections.  The parties are advised

18  that failure to file objections within the specified time may waive the right to appeal the District

19  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20  DATED: January 2, 2008.

21

22                                      _____

23                                      DALE A. DROZD
                                        UNITED STATES MAGISTRATE JUDGE

24  DAD:9
    fraz0859.57

25

26

12